UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PAUL ERIC HAWBECKER, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No.  SA-14-CV-1010-XR |
| § | |
| MICHELLE MARIE HALL, § | |
| § | |
| *Defendant*. § | |
| § | |

**ORDER**

On this day the Court considered Defendant Michelle Marie Hall's Motion to Dismiss (Docket No. 12).  After careful consideration, the Court denies the motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Paul Eric Hawbecker filed his original complaint on November 13, 2014, alleging that Michelle Marie Hall made a series of libelous and defamatory statements about him via the Internet. (Docket No. 1).  The Complaint asserts that, sometime around April 2014, Hawbecker discovered that Hall had created a Facebook page and made numerous posts to that page indicating that Hawbecker sexually abused children, including Halls's daughter. Hawbecker also alleges that Hall contacted Hawbecker's friends, family members, and employer during 2014 via Facebook messages and e-mail in an effort to publicize her allegations. (Docket no. 1 at ¶ 6).

The Complaint alleges that Hall committed libel and defamation in violation of Texas Civil Practice & Remedies Code Section 73.001.  Hawbecker, a resident of Texas, asserts that

1

Hall, a resident of Colorado, caused him damages in the amount of $250,000 in Texas. Hawbecker properly invokes this Court's diversity jurisdiction. *Id.*

In response to the Complaint, Hall, representing herself *pro se*, filed a Motion to Dismiss under Rule 12(b) on January 5, 2015 with a header asserting "Lack of Jurisdiction, Improper Venue, Insufficient Service of Process, or Failure to State a Claim." (Docket No. 12). Under this heading, the motion specifically moves for dismissal based on (1) lack of personal jurisdiction and (2) improper venue.

Hall failed to respond to the Complaint within 21 days as required by Fed. R. Civ. P. 12(a)(1)(A). As a result, Hawbecker filed a Request for Clerk's Entry of Default on January 6, 2015. (Docket No. 10). The Clerk entered default on January 7, 2015. (Docket No. 11).

Hawbecker filed a Response to the Motion to Dismiss on January 16, 2015. (Docket No. 15). He argued Hall's motion failed to state with particularity any reason for granting the motion under Fed. R. Civ. P. 7(b)(1)(B) and Local Rule CV-7(d)(1). Hawbecker alternatively argued the factual allegations in his Complaint demonstrate personal jurisdiction over Hall and proper venue.

## II. ANALYSIS

### A. Inadequacy of Proof of Service on Defendant Hall

At the outset, the Court notes that "[a] document filed *pro se* is to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Haase v. Countrywide Home Loans Inc.*, 748 F.3d 624, 629 (5th Cir. 2014) ("[W]e liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than parties represented

by counsel.") (quoting *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995)).  *Pro se* litigants, however, must still adhere to the Federal Rules of Civil Procedure and make some legal argument. *Id*.

Hawbecker presented an Affidavit of Service to the Court per Fed. R. Civ. P. 4(l)(1). (Docket No. 9).  Hawbecker's Request for Entry of Default asserts that Defendant Michelle Marie Hall was properly served.  However, the process server swore that he "Individually/Personally served by delivering a true copy of the signed summons . . . to: Michelle Marie *Hawbecker*."  (Docket No. 9) (emphasis added).

In Texas, strict compliance with requirements for service is required to establish personal jurisdiction over the defendant in accordance with the long-arm statute.  *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).  Because the name of the individual served does not match the name of the Defendant, the return of service is defective and is insufficient to support entry of default.  *See, e.g., Greystar, LLC v. Adams,* 426 S.W.3d 861, 867–68 (Tex. App.—Dallas, 2014, no pet.).  Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause."  Because the return of service cannot support entry of default, good cause exists to set it aside.  Accordingly, the Clerk's Entry of Default (Docket No. 11) is VACATED.

It appears that the process server did serve Hall, but wrote the incorrect name on the proof of service.  "Failure to prove service does not affect the validity of service."  FED. R. CIV. P. 4(l)(3).  If this is the case, the Court will allow Hawbecker to timely amend the proof of service to correct the error under Fed. R. Civ. P. 4(l)(3).  However, if Hall has not been

served, Hawbecker shall notify the Court and is reminded that service must be completed within 120 days of filing the Complaint.

### B. Personal Jurisdiction

#### 1. Personal Jurisdiction Standard

In order to establish personal jurisdiction in a diversity case over an out-of-state defendant, the plaintiff must present *prima facie* evidence that "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The Court must accept the uncontroverted allegations in the Complaint, affidavits, or other documentation as true. *Id*. (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). "Because Texas's long-arm statute reaches to the constitutional limits," it is only necessary to assess if the Court's exercise of personal jurisdiction offends due process. *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)). Due process is satisfied when (1) the "defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Clemens*, 615 F.3d at 378 (citing *Revell*, 317 F.3d at 470). Minimum contacts are found via specific jurisdiction "when the defendant's contacts with the forum arise from, or are directly related to, the cause of action." *Revell*, 317 F.3d at 470 (internal quotations omitted).

The Internet presents a unique challenge to establishing personal jurisdiction over a non-resident defendant. The Fifth Circuit applies a "sliding scale" test described in *Zippo*

4

*Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to decide whether a defendant has sufficient minimum contacts with the forum state via the internet. *Revell*, 317 F.3d at 470; *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).[1]  The test is rooted in the effects doctrine articulated in *Calder v. Jones*, 465 U.S. 783 (1984), and essentially requires an examination of "the extent of the interactivity and nature of the forum contacts."  *Revell*, 317 F.3d at 470.  "The *Zippo* decision categorized Internet use into a spectrum . . . ."  *Mink*, 190 F.3d at 336.  At one end is a "passive" website that merely allows the owner to post information; "[i]t will not be sufficient to establish personal jurisdiction." *Revell*, 317 F.3d at 470.  Personal jurisdiction will be proper in cases at the other end of the spectrum where the site "owners engage in repeated online contacts with forum residents over the internet."  *Id*.  "In between are those sites allow[ing] for bilateral information exchange." *Id*.  The middle cases require an examination of the extent of the interactivity and nature of the forum contacts.  *Id*.

   **2. Analysis: Minimum Contacts**

   Hawbecker's Response to the Motion (Docket No. 15) asserts Fed. R. Civ. P. 7(b) and Local Rule CV-7 are not satisfied by Hall's Motion.  Rule 7(b) requires that the motion "state with particularity the grounds for seeking the order" and Local Rule CV-7 requires that "[l]egal authorities supporting any motion must be cited in the motion."  Hall's Motion to Dismiss declares in a one-sentence statement that "the defendant is not subject to the personal

---

[1] The Fifth Circuit has not revisited its adoption of the *Zippo* test since *Revell* despite the changing nature of the internet over that period and other circuit's abandonment of the test.  *See S. U.S. Trade Ass'n v. Unidentified Parties*, No. CIV.A. 10-1669, 2011 WL 2457859, at *9-10 (E.D. La. June 16, 2011).  The Fifth Circuit did not distinguish in *Revell* whether it was applying *Zippo* only to the defendant that was a commercial website operator and not the individuals, but this Court finds no Fifth Circuit case that would make *Zippo* inapplicable to Hall as a non-commercial website operator and individual.

jurisdiction of this court." (Docket No. 12).  No legal authority is cited or facts presented that would contradict Hawbecker's alleged facts in the Complaint.  However, considering Hall's *pro se* status, and in the interest of equity, the Court will apply the alleged facts presented in the Complaint to Hall's lack of personal jurisdiction claim.

Application of the *Zippo* and *Calder* tests show that Hall has sufficient minimum contacts with Texas for this Court to possess specific jurisdiction over her.

*Calder v. Jones* is the Supreme Court's leading defamation personal jurisdiction case.  465 U.S. 783 (1984).  There, the plaintiff sued a reporter and a tabloid magazine editor in California, seeking relief for an allegedly defamatory story that the defendants fabricated and published. *Calder*, 465 U.S. at 784–85.  The individual defendants were citizens of Florida. *Id*. at 785–86.  The Supreme Court held that the California court had personal jurisdiction over the nonresident defendants because "California [was] the focal point of both the story and of the harm suffered."  *Id*. at 789.  The Court explained that "[t]he allegedly libelous story concerned the California activities of a California resident," and "[t]he article was drawn from California sources, and the brunt of the harm . . . was suffered in California."  *Id*. at 788–89.  The Court further stated that the defendants "knew that the brunt of [the] injury would be felt by [the plaintiff] in the [forum] state."  *Id*. at 789–90.  The defendants had "expressly aimed" their allegedly defamatory statements at California and taken action "calculated to cause injury to [the plaintiff] in California." *Id*. at 789–91.

The Fifth Circuit first applied the *Zippo* test in *Mink v. AAAA Development LLC*; while the case involved a breach of copyright, the Texas plaintiff alleged the court had personal jurisdiction over the Vermont defendant because the defendant's website was accessible to

Texas residents. *Mink*, 190 F.3d at 336. Considering the case as a question of first impression, the court adopted the *Zippo* test and found the level of interactivity with forum residents via the defendant's Internet website to be insufficient to establish personal jurisdiction. *Id.* at 337. The court classified the website as a "passive advertisement which is not grounds for the exercise of personal jurisdiction." *Id*. Even though the website did allow those in Texas to contact the owner via email, the site lacked other forms of interactivity that would confer jurisdiction over the site's owners, and the owners had not personally reached out to forum residents directly. *Id*.

Subsequently in *Revell v. Lidov*, the Fifth Circuit applied the *Zippo* test in a libel case filed in the Northern District of Texas by a Texas resident. The court examined whether an article posted by a Massachusetts defendant to a website hosted by Columbia University in New York established sufficient minimum contacts for the Texas federal court to have personal jurisdiction. *Revell,* 317 F.3d at 469–70. Comparing the facts to those of *Calder*, the court found the subject post "contained no reference to Texas," no reference to Texas activities of the plaintiff, "it was not directed at Texas readers," and "Texas was not the focal point of the article or harm suffered." *Id.* at 473. The court found instructive the Fourth Circuit's statement that "application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly directed at or directed to the forum state." *Id.* at 475 (quoting *ALS Scan, Inc. v. Digital Servs. Consultants*, 293 F.3d 707, 714 (4th Cir. 2002)). There was insufficient contact or connection with Texas in the substance of the article to establish minimum contacts in *Revell*. *Id.* at 475–76.

Hawbecker provided alleged Facebook posts and emails between Hall and Texas residents as exhibits to the Complaint.  A Facebook post by Hall states that Hawbecker "lives and works in San Antonio Texas so please pass the word on to any one [sic] that you may know there," apparently in an effort to publicize her allegations to Texas residents.  (Docket No. 1-1, p. 2).  Hawbecker also provided a record of a Facebook message exchange between Hall and a Nebraska resident in which Hall states her allegation and demonstrates knowledge that Hawbecker resides in Texas.  (Docket No. 1-3).  Hall also allegedly personally contacted Hawbecker's friends, relatives, students, and employer in Texas via Facebook.  (Docket No. 15-2, Docket No. 1 at ¶¶ 46-49).

Unlike *Revell*, the alleged Facebook page and messages make the website and contacts with Texas interactive in nature.  Additionally, Hall apparently knew Hawbecker lives in Texas, and the focal point or effects of her allegations were designed to be felt in Texas by Hawbecker.  Taking Hawbecker's allegations as true for the purpose of answering this jurisdictional question, Hall expressly aimed online contacts to Texas residents and intended the focal point and brunt of her posts and interactions to be felt by Hawbecker in Texas.  Therefore, specific jurisdiction over Hall is proper because she had sufficient minimum contacts with Texas.  *See Calder*, 465 U.S. at 789, 790 (defendants' actions were "expressly aimed" at the forum state and were "calculated to cause injury to the respondent" in the forum state); *Revell*, 317 F.3d at 470 (stating that at one end of the sliding scale are cases where Internet site owners "engage in repeated online contacts with forum residents over the Internet," which may be sufficient to establish personal jurisdiction); *McVea v. Crisp*, No. SA-07-CA-353-XR, 2007 WL 4205648 at *2 (W.D. Tex. Nov. 5, 2007) (finding a defendant's

allegedly defamatory comments on a website invoked the court's jurisdiction when the defendant expressly aimed his comments at Texas, as he knew the comments about the research and work of two individuals would inflict the brunt of their harm in Texas); *So. U.S. Trade Ass'n v. Unidentified Parties*, No. CIV.A. 10-1669, 2011 WL 2457859, at *12 (E.D. La. June 16, 2011) (holding a defendant in an Internet defamation case made sufficient contacts with the forum state to satisfy due process by directly aiming his comments at the forum state when the defendant knew the plaintiffs, a non-profit organization and its officers, resided there and the allegedly defamatory statements were about conduct occurring in the forum state, so the brunt of the effect of the statements would be felt there).

### 3. Analysis: Fair Play and Substantial Justice

While the first element of due process is satisfied, this Court must still review the second element's notions of fair play and substantial justice. Hall bears the burden of presenting "a 'compelling case that jurisdiction is unreasonable and incompatible with 'fair play and substantial justice.'" *Tempur-Pedic Intl, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 377 (N.D. Tex. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). The Supreme Court set out five factors in *Burger King* for determining fair play and substantial justice: (1) the burden imposed on the defendant, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) and the shared interest of the several states in furthering fundamental substantive social policies. *See* 471 U.S. at 476–77; *see also Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

Of the five *Burger King* factors, only one, the burden on the defendant, weighs in Hall's favor. Noting Hall's *pro se* status and apparent disparity in legal resources (Hawbecker has retained three attorneys in two states), the burden seems heavy on Hall to continue litigating the case in Texas. However, the other four factors weigh in Hawbecker's favor. It is in the forum state's interest to litigate the case here, Hawbecker's interest in effective and efficient litigation is satisfied here, and the judicial system's interest in efficient litigation is also served by litigating personal defamation cases in the state where the comments were clearly directed.

Further, according to the Fifth Circuit, to find fair play and substantial justice in a defamation case with a non-resident, "[t]he defendant must be chargeable with knowledge of the forum at which [her] conduct is directed in order to reasonably anticipate being haled into court in that forum, as *Calder* itself and numerous cases from other circuits applying *Calder* confirm." *Revell*, 317 F.3d at 475. "Fair play and substantial justice" is a fairness inquiry that "captures the reasonableness of hauling a defendant from [her] home state before the court of a sister state; in the main a pragmatic account of reasonable expectations—if you are going to pick a fight in Texas, it is reasonable to expect that it be settled there." *Id.* at 476. This Court must "look to the geographic focus of the [posting], not the bite of the defamation, the blackness of the calumny, or who provoked the fight." *Id.* In this vein, Hall mentioned multiple times she knew Hawbecker resided in Texas and wanted her comments to reach people in this state to impact Hawbecker's life and livelihood.

Keeping *Revell*'s guidance in mind and noting the lack of argument presented by Hall, this Court concludes that because the allegations were knowingly targeted at Texas and four of

10

the five *Burger King* factors weigh against Hall, the fairness inquiry is satisfied by litigating the case in Texas. *See McVea v. Crisp*, No. SA-07-CA-353-XR, 2007 WL 4205648 at *2 (W.D. Tex. Nov. 5, 2007) (finding the fairness element satisfied when the allegedly defamatory comments posted to a website were knowingly directed at a Texas resident).

As both elements of the due process analysis are met, this Court holds that it has specific jurisdiction over Hall in this case, provided the previously described defect in service is corrected by Hawbecker.

### C. Venue

Hall also asserted that "venue is improper (this defendant does not reside in this district and no part of the events or omissions giving rise to the claim occurred in the district)." (Docket No. 12).

Venue in federal court is generally governed by 28 U.S.C. § 1391 (a statute that "shall govern the venue of all civil actions brought in district courts of the United States"). This defamation case is controlled by § 1391 because defamation does not have an exception to § 1391(a). *See, e.g., Hoffman v. Bailey*, 996 F. Supp. 2d 477, 486 (E.D. La. 2014) (a defamation case where venue was established under § 1391).

To determine whether venue is proper, courts look to § 1391(b)'s three subsections. If a case's chosen venue falls under one of the three subsections, "venue is proper; if it does not, venue is improper . . . ." *Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013). Hawbecker alleges that "[v]enue is proper under 28 U.S.C. 1391(b)(2)," (Docket No. 1 at ¶ 2), which states that venue is proper in "a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

As with Hall's argument regarding lack of personal jurisdiction, she provided no legal argument and no citation to legal authority, but merely presented a one-sentence conclusory statement. (Docket No. 12). Even though Hall's motion does not meet the standards of Fed. R. Civ. P. 7 and Local Rule CV-7, again, considering Hall's *pro se* status, the Court addresses the substance of the argument.

As previously discussed under the personal jurisdiction analysis, the state law claims are based on the effects of the Facebook posts and emails on Hawbecker, a resident of Bexar County in the Western District of Texas. In a defamation case, the Court may consider the venue of where the defamation occurred and the venue of where the harm was felt to determine the location of "a substantial part of the events" under 1391(b)(2). 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3806 (4th ed.). Recent dicta from the Supreme Court in *Walden v. Fiore*, 135 S. Ct. 1115 (2014), is helpful here. While discussing *Calder v. Jones* in the context of establishing personal jurisdiction over a defendant, the Court observed "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons." *Walden*, 135 S. Ct. at 1124–25 (2014).[2]

---

[2] "A libel is a defamation expressed in written or other graphic form . . . that tends to injure a living person's reputation . . . ." TEX. CIV. PRAC. & REM. CODE § 73.001.

The Complaint alleges injury to Hawbecker's reputation in the San Antonio Division of the Western District of Texas. Therefore a substantial part of the events giving rise to his claim is the injury to his reputation in San Antonio, Texas. *See Bounty-Full Entertainment, Inc. v. Forever Blue Entertainment Group*, 923 F. Supp. 950, 958 (S.D. Tex. 1996) (finding venue was proper in the Southern District of Texas when a California defendant sent an allegedly defamatory letter to Texas). Venue may be proper in multiple locations. 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3806 n.10 (4th ed.). If the writing was created in Colorado, then Colorado might also be a proper venue. However, considering the effect of the alleged defamation was intended to be felt in San Antonio, the San Antonio Division of the Western District of Texas is a proper venue in this case. *See Boehner v. Heise*, 410 F. Supp. 2d 228, 240 (S.D. N.Y. 2006) (finding that even though a libelous letter was written in Wisconsin, venue was proper in New York as a substantial part of the events creating the cause of action related to the Southern District of New York).

### III. CONCLUSION

Plaintiff's proof of service on Defendant Hall is defective. As a result, the Clerk's Entry of Default (Docket No. 11) is VACATED. However Plaintiff may cure this defect by amending the proof of service or by serving Defendant within the 120-day deadline of Fed. R. Civ. P. 4. Defendant's Motion to Dismiss (Docket No. 12) is DENIED. Provided Defendant is properly served, this Court has specific jurisdiction over Defendant based on the *prima facie* allegations presented by Plaintiff in the Complaint and venue is proper in the San Antonio Division of the Western District of Texas.

It is so ORDERED.

SIGNED this 19th day of February, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE