UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| PAUL ERIC HAWBECKER, <br><br> Plaintiff, <br><br> v. <br><br> MICHELLE MARIE HALL <br><br> Defendant. | Case No: 5:14-cv-1010-RCL |

## MEMORANDUM ORDER

Plaintiff Paul Eric Hawbecker brought this action against defendant Michelle Marie Hall for libel and defamation in violation of Texas Civil Practices & Remedies Code Section 73.001. Specifically, Hawbecker alleged that defendant Hall made knowingly false statements on Facebook and to his employer about Hawbecker sexually abusing children and possessing sexually explicit photos of children. On December 9, 2016, Judge Xavier Rodriguez granted summary judgment to Mr. Hawbecker on the issue of liability, finding that Hawbecker had established, as a matter of law, all elements of his cause of action for defamation per se and that Ms. Hall had failed to establish any defense for her statements. ECF No. 67. On March 2, 2017, this Court conducted a bench trial on the sole remaining issue: the damages caused by Hall's defamatory statements.

At trial, Mr. Hawbecker presented evidence and testified concerning the severe impact that Hall's egregious statements had, and continue to have, on his everyday life. The Court also heard testimony from Hawbecker's friends and family concerning not only the devastating consequences

1

of Hall's words, but also the good standing of the Hawbecker name in the San Antonio community generally, as well as the quality of Paul Hawbecker's character individually. Hall did not appear to defend her statements or challenge the evidence presented to the Court.

The Court has ascertained the credibility of these witnesses and evaluated the probative value of the evidence submitted at trial. In light of the previous finding that Hall's statements were defamatory per se, and having considered the evidence and testimony presented at trial, the Court makes the following findings of fact and conclusions of law and awards Paul Hawbecker $443,000 in total damages. The Court also grants the injunctive relief outlined below.

## I.   FINDINGS OF FACT

Beginning in November 2011, Michelle Hall, who lives in Colorado, created a Facebook group page titled "Please help me stop a child molester!" in which she accused Paul Hawbecker of sexually molesting and taking pictures of her daughter. She also stated that law enforcement investigations were active against him in Colorado and Texas, which she knew (or should have known) to be false. The stated goal of the original post was to spread his name and pictures around so that other people could protect their children and others from a "monster." Over time, Hall posted a picture of Hawbecker, invited others to join and share the group, and made several posts to the group, including one in which she stated she would e-mail most of Hawbecker's Facebook friends and employers a link to the page. Other members of the group commented that child molesters should be killed, tortured, castrated, and hanged. Hall posted a comment in November 2011 that Hawbecker taught karate to kids. In another post in April 2014, she stated that Hawbecker lived and worked in San Antonio, worked with and around children, and asked group members to spread his name to anyone they knew in San Antonio. She also "liked" Hawbecker's

employer, enabling him to see many of her posts. It was only in April 2014, nearly three years after the group was created, that Hawbecker found out about the existence of the group.

Prior to filing this suit, Hawbecker sent a request to Hall to retract the defamatory statements, and Hall has not retracted them. In hearings before Judge Rodriguez, Hall made several misrepresentations to the Court. Most notably, she represented that she had not promoted or sent out links to the Facebook groups when she had done so multiple times. In response to a summary judgment motion, Hall claimed she had limited knowledge of how Facebook worked, that she thought the group was "private and closed" and that she never intended any of the statements to get out. However, the evidence shows that Hall repeatedly expressed her intent to contact Hawbecker's friends and employers about the allegations contained in the Facebook group, and during this lawsuit, she relinquished admin privileges over the page to another Facebook user to allow the page to continue. It remains unclear, however, to what extent the group page is still active or whether the defamatory statements have been removed.

Hawbecker is a lifelong resident of San Antonio, Texas, and his immediate family has lived in the surrounding community for their entire lives. Their surname is distinct and recognizable in the community. Hawbecker's parents, for example, own and operate a small business in San Antonio, and his sister works as a teacher for special needs students in Bexar County. Hawbecker himself had worked as a martial arts instructor in San Antonio since approximately November 2001. Until recently, he was listed on a website as one of few persons holding a fourth-degree blackbelt in the San Antonio area. However, after Hall's Facebook posts surfaced in the San Antonio community, at least one parent of a child at the school expressed discomfort with Hawbecker's affiliation with the school. Hawbecker's employer cut his time and prevented him from teaching classes with children or female students. Since April 2014,

Hawbecker has been demoted and moved to half-time. Ultimately, in February of 2017, he was terminated as a martial arts instructor. Any references to Hawbecker, or his qualifications as an instructor, were removed from the school's website.

After his hours were cut at the school, but prior to his termination, Hawbecker sought supplemental income by applying to sales or telemarketing jobs. However, potential employers rarely responded to his applications, and when they did, Hawbecker was told that "something came back" on his background check and he was denied employment. At least one employer sat down with Hawbecker and showed him that a search for the name "Paul Eric Hawbecker" yielded results showing Hall's accusations and documents from this very lawsuit. That employer bluntly informed Hawbecker that companies, particularly ones who conduct business online, are protective of their images and "could not take a chance" in hiring someone with his background.

At the time of trial, Hawbecker had been terminated and was continuing to search for employment. Based on evidence at trial, Hawbecker was earning $2,500.00 per month—approximately $30,000.00 annually—as an instructor prior to Hall's defamatory statements surfacing in San Antonio. Following those statements, his monthly wages dropped to $500.00 per month, or approximately $6,000.00 annually. According to his IRS filings, his income in 2015 was $3,866.05. According to records presented to the Court, the martial arts school paid Hawbecker $5,655.00 in 2016. He has also borrowed at least $12,940.25 from family and friends to cover some of his living expenses: $6,465.00 for miscellaneous items such as house/rental payments and $6,475.25 for legal expenses.

Hawbecker also suffered emotional and mental harm. After the defamatory statements surfaced in April 2014, Hawbecker's romantic relationships failed. He lost friends and started seeing a counsellor to help manage his anxiety regarding Hall's allegations. Hawbecker testified
4

that he is afraid to leave the house or go in public, and other witnesses testified that Hawbecker is noticeably different, withdrawn, and lacking much of his characteristic self-esteem. At the time of trial, he was unemployed.

## II. CONCLUSIONS OF LAW

### A. Legal Standards

In defamation per se cases, there are three types of damages that may be at issue: (1) nominal damages; (2) actual or compensatory damages; and (3) exemplary damages. *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013). "Defamation per se refers to statements that are so obviously harmful that general damages may be presumed." *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015). For per se defamation, a plaintiff is presumed to be entitled to nominal damages at the very least, but the plaintiff is not limited to that amount, and the trier of fact may choose to award damages that are substantial. *Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012). "Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se. *Id.* at 596 (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). Similarly, statements that "adversely reflect on a person's fitness to conduct his or her business are also deemed defamatory per se." *Id.*

### B. Analysis

This Court has already determined Hall is liable for statements that are defamation per se. ECF No. 67. The Court need only determine the appropriate remedy for the damage caused by Hall's defamatory speech.

Based on the previous determination of liability and the facts presented at trial, Mr. Hawbecker seeks general damages in the amount of $500,000.00 for pain and suffering, special damages in the amount of $432,400.00 for lost wages and potential future earnings, and exemplary

5

damages in the amount of $400,000.00. ECF No. 84. Plaintiff also seeks a court order requiring defendant Hall to contact members of the defamatory Facebook group and apologize for making defamatory statements against plaintiff Hawbecker. Similarly, plaintiff seeks a court order requiring Hall to contact Facebook corporate headquarters to request the page be removed from its servers. Hall has provided no evidence as to damages, and has not challenged any of Hawbecker's requests for relief. The Court, in accordance with the facts presented at trial, the Court makes the following conclusions as to damages.

### 1. *Nominal Damages*

Nominal damages are a trivial sum of money—such as $1.00—awarded to a litigant who has established a defamation per se cause of action but has not established that he is entitled to compensatory damages. *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013). Based on the finding that Hall is liable for defamation per se, the Court concludes that Hawbecker is, at the very least, entitled to nominal damages. However, as outlined below, Hawbecker has sufficiently established by competent evidence that he is entitled to compensatory damages. Therefore, the Court need not articulate some lower, trivial award.

### 2. *Compensatory Damages*

Texas law on defamation allows for the recovery of compensatory damages arising out of the loss of reputation caused by the publication of false statements. Tex. Civ. Prac. & Rem Code. § 73.054. Compensatory damages are separated between specific/economic and general/noneconomic damages. Tex. Civ. Prac. & Rem. Code § 41.001(8). Economic damages, also known as special damages, compensate a plaintiff for actual pecuniary losses, such as lost wages. *Id.* at § 41.001(4). Noneconomic damages, also known as general damages, compensate a plaintiff for non-pecuniary losses, such as mental or emotional pain or anguish, loss of

companionship, loss of enjoyment of life, etc. *Id.* at § 41.001(12). An award of general damages, such as for a loss of reputation or mental anguish, that exceeds a nominal amount must have evidentiary support. *In re Lipsky*, 460 S.W.3d at 593.

Based on the evidence, plaintiff is entitled to both special/economic damages in lost wages and lost future earnings, as well as general/noneconomic damages for mental anguish and loss of reputation.

*a. Special/Economic Damages*

Based on the evidence, Hawbecker incurred damages from the defamatory statements beginning in April 2014, after Hall's comments in defamatory Facebook group had reached his community in San Antonio. The Court finds there is no evidence of damages to support compensation for lost wages prior to April 2014. However, the Court will credit Hawbecker's testimony that over a period of 34 months—April 2014 to March 2017—he went from earning $2,500 per month to $500 per month. Plaintiff Hawbecker is therefore entitled to $2,000.00 per month, the difference in his monthly income during that period. The Court will therefore award plaintiff $68,000.00 in lost last wages for the period of April 2014 to March 2017.

Further, based on the testimony that Hawbecker was terminated at the end of February 2017 and has experienced difficulties obtaining future employment as a direct result of Hall's defamatory statements, the Court finds that plaintiff is entitled to compensation for wages lost this year, as well as lost business opportunity and lost earning capacity in 2017. Such damages will be calculated at $2,500.00 per month for ten months, running from the date of trial until the end of the year. It is the Court's hope and expectation that by January 2018, additional time—coupled with the explanations provided in this order—will allow plaintiff Hawbecker to gain some steady employment and return some normalcy to his life. Therefore, the Court will award an additional

award totaling $25,000.00 in damages for lost wages from the date of trial as lost future earning capacity and lost business opportunity.

Under Texas law, which follows the American Rule on damages, attorney's fees are not recoverable unless specifically provided for by statute. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). The Court is aware of no statute allowing a plaintiff recovery of attorney's fees for defamation. Accordingly, the Court is unable to award compensation for monies that Hawbecker was forced to borrow in order to pay his legal fees.

Similarly, monies borrowed by Hawbecker to pay for his debts were not incurred as a result of Hall's defamatory remarks because Hawbecker would have been required to pay those out of his regular salary. Awarding damages for those borrowed funds would amount to double recovery.

### b. General/Noneconomic Damages

"Mental anguish is only compensable if it causes a substantial disruption in daily routine or a high degree of mental pain and distress." *Hancock*, 400 S.W.3d at 68 (cleaned up). Based on the testimony at trial that Hawbecker is afraid to leave home and has sought counselling to cope with this incident, as well as the truly awful nature of the defamatory statements leveled against him, the Court is satisfied that Hawbecker suffered a substantial disruption in his daily routine or a sufficiently high degree of mental pain and distress to justify the award of mental anguish damages. Similarly, because the defamatory statements at issue here are defamatory per se, this Court may presume loss of reputation damages. Further, the Court will credit plaintiff's testimony that Hall's statements have impacted his reputation in the community and have made it nearly impossible for him to continue to participate in activities he enjoys, such as working as a martial arts instructor or volunteering with children. The Court will therefore award plaintiff $250,000.00 in past and future loss of reputation and past and future mental anguish damages.

### *3. Exemplary/Punitive Damages*

Exemplary damages in Texas are awarded as a penalty or punishment, not as compensation. Tex. Civ. Prac. & Rem. Code § 41.001(5). Exemplary damages may only be awarded if the complainant proves by clear and convincing evidence that the harm complained of resulted from fraud, malice, or gross negligence, and some damages other than nominal damages are awarded. *Id.* at §§ 41.003–04. Exemplary damages may not exceed an amount equal to the greater of (1) two times the amount of economic damages, plus an amount equal to noneconomic damages, or (2) $200,000. *Id.* at § 41.008. The trier of fact must consider (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, (5) the extent to which such conduct offends a public sense of justice and propriety, (6) the net worth of the defendant. *Id.* at § 41.011. At bottom, the award of exemplary damages requires an analysis of the relationship between the actual harm suffered and the damages awarded to ensure the exemplary damages are not grossly disproportional to the gravity of the defendant's conduct. *See Cooper Indus. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 434–36 (2001); *Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex. 2004).

At the outset, the Court finds that Hall acted with malice in making her defamatory accusations against Hawbecker. Accordingly, exemplary damages are available. However, the Court notes that Hall likely does not have the funds to pay the compensatory damages outlined above, much less an additional award of exemplary damages. Indeed, the Court understands that Hall was unable to travel to appear before this Court, choosing instead to appear by phone at previous status conferences. Similarly, she did not appear to defend herself at the bench trial on damages in part because of her inability to travel or hire a lawyer to represent her. The Court must consider this in its determination on whether or not to award an additional, punitive damages.

However, the Court must also consider the nature of the wrong and the character of the conduct here. In short, the record reflects truly abhorrent behavior on the part of the defendant. Despite Hall's protestations to the contrary, it is clear that she knew exactly what she was doing when she made these defamatory statements. Further, she knew and intended that Hawbecker suffer as a result of those statements when she individually targeted Hawbecker's friends, family, and employer, and encouraged others on the site to do the same. To put it plainly, Hall intended to cause this man harm by directly accusing him of despicable sexual misdeeds, knowingly mischaracterizing his criminal record and the status of criminal investigations against him, and deliberately targeting his peers so as to ensure that he could no longer work in his chosen field. Defendant Hall intended that result, and she largely achieved her goal. She is therefore directly culpable for the damages she has caused to Hawbecker.

Further, this Court can scarcely envision conduct more indecent or destructive to another person—other than perhaps a direct act of violence—than false accusations of child molestation. Indeed, attacks on children are reprehensible, and civilized society is in agreement that those who perpetuate such evil acts should be punished to the fullest extent the law allows. However, as highlighted by the comments in Hall's Facebook group, accusations of child molestation are often accompanied by calls for violence and vigilantism against the accused. False and reckless accusations of such severe conduct can not only threaten the livelihood of those accused, but it can often endanger their very lives. The incitement or encouragement of such lawlessness by knowingly peddling false accusations of criminal conduct is not only offensive to the sense of American justice, it is antithetical to the rule of law.

In this case, false allegations of sexual misconduct have upended a man's life. While the Court has attempted to compensate him for the damages he has suffered, no dollar amount will

ever will truly be able to compensate Hawbecker for the disruption and damage done to his, and his family's, reputation. But the Court also recognizes that Hall's accusations could have resulted in more dire consequences if some incensed member of the general public had taken justice into his or her own hands and lashed out. In the age of social media, what we say on the Internet matters, and accusations of severe misconduct carry potentially severe consequences.

While the Court does not necessarily consider the defendant to be a bad person, her conduct here was deplorable and unacceptable. The Court hopes that an award of exemplary damages will deter future actors from engaging in such reckless behavior.

In light of the relevant factors, the Court finds that an award of $100,000.00 in exemplary damages is reasonable and proportional to the conduct here.

### 4. *Injunctive Relief*

Generally, the remedy for defamation is damages. "The traditional rule of Anglo–American law is that equity has no jurisdiction to enjoin defamation." *Kinney v. Barnes,* 443 S.W.3d 87, 95 (Tex. 2014), cert. denied, 135 S. Ct. 1164, 190 L. Ed. 2d 914 (2015) (quoting Erwin Chemerinsky, *Injunctions in Defamation Cases,* 57 SYRACUSE L. REV. 157, 165 (2007)). Injunctive relief may be available under certain circumstances, such as the removing or correcting past defamatory statements that were already published. *See Kinney,* 443 S.W.3d at 92 (holding that an injunction requiring the removal of statements from a website was lawful). However, such relief should be granted with caution, as both the Texas Supreme Court and the United States Supreme Court have indicated that injunctions prohibiting *future* defamatory speech are unconstitutional prior restraints on speech. *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."); *Ex parte Tucker,* 110 Tex. 335, 337 (Tex. 1920)

(holding that abuse of the freedom of speech "is not to be remedied by denial of the right to speak, but only by appropriate penalties for what is wrongfully spoken").

In addition to the damages listed above, plaintiff here seeks injunctive relief in the form of a court-ordered apology directed to members of the Facebook group for knowingly defaming Hawbecker. This Court will order Hall to remove any defamatory remarks directed toward Hawbecker already posted on her Facebook page or on the group's page, to the extent the group page still exists, within thirty days of this date. To the extent that Hall no longer has access to the group page, if it exists, the Court will also order Hall to promptly send a copy of this order to Facebook corporate headquarters, via certified mail, return receipt requested, within thirty days of this date requesting Facebook to remove the defamatory page from its server. Also within thirty days of this date, Hall must provide a copy of any such letter to the Court.

To the extent that the defendant feels she should apologize to Hawbecker for the damage she has caused, the Court thinks that appropriate. However, compelled apologies are, by definition, insincere, and they are unlikely to adequately convey a person's remorse or help a wronged individual move on. In light of the law's disfavor against injunctive relief in defamation actions, the Court will not order Hall to issue an apology.

The Court hopes, however, that the language of this order is sufficient to convey to any reader that Hall's statements regarding Hawbecker were false, as well as the grossly injuriousness. Michelle Marie Hall started this Facebook group based on untrue facts about Paul Eric Hawbecker, and this Court has determined that she knowingly published defamatory statements against him. To the extent that these defamatory remarks come up in Mr. Hawbecker's future pursuits, the Court hopes that the language included in this order may be of some assistance to him.

It is therefore **ORDERED** that plaintiff Hawbecker is entitled to damages in the amount of $443,000.00, to be paid by the defendant Michelle Marie Hall.

It is further **ORDERED** that defendant Hall shall within thirty (30) days remove the defamatory statements from any Facebook page over which she has control, including, but not limited to, her own personal Facebook page and any Facebook group page to which she is an administrator.

It is further **ORDERED** that defendant shall within thirty (30) days send a copy of this Order to Facebook corporate headquarters via certified mail, return receipt requested, with a cover letter requesting that Facebook remove the defamatory page from its servers, if it still exists.

It is further **ORDERED** that defendant shall within thirty (30) days provide the Court a copy of her letter to Facebook headquarters, with proof of mailing.

This is a final, appealable order. The Clerk of Court shall issue final judgment.

It is **SO ORDERED**.

Date: August 25, 2017

Royce C. Lamberth
United States District Judge